THE McCORMICK HARVESTING MACHINE COMPANY

v.

JOHN DIRREEN, SHERIFF.

*Chattel Mortgages—Allegations of Fraud—Failure of Proof.*

Where mortgaged property was seized on execution, and the mortgagee replevied, and the defense set up to the action of replevin was, that the mortgage was fraudulent and void because of an alleged agreement between mortgagee and mortgagor, that the mortgagor could sell the mortgaged property in the usual course of his business, *held:* That there was a total failure of proof to establish the charge of fraud as against the mortgagee.

[Opinion filed September 29, 1890.]

APPEAL from the Circuit Court of Cass County; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. KETCHAM & GRIDLEY, for appellant.

Messrs. MILLS & McCLURE, for appellee.

PLEASANTS, J.   Henry C. Loomis, a dealer in agricultural implements at Beardstown, being indebted to appellant in the sum of $957.48, on December 7, 1889, gave it his nine promissory notes for $100 each, and one for $57.48, payable successively at intervals of ten days from January 10, 1890, and to secure the same a chattel mortgage on certain implements therein described, which was duly acknowledged, docketed and recorded.   About the 15th of January, two J. P. judgments were rendered against Loomis and another party named, and executions thereon issued to the appellee, who was then sheriff, by virtue of which he levied upon and took the said mortgaged property, and having refused to deliver it to appellant upon its demand duly made, this action of replevin was brought to recover it.   The defense set up was that the mortgage was void as against creditors of the mortgagor, and the fraud claimed as avoiding it was an understanding between the

parties that he might sell the property in the usual course of his business. The verdict and judgment were for the defendant.

Appellant complains of the refusal of two instructions asked on its behalf. One of these, we think, could not have benefited appellant if it had been given, and the other seemed to hold that the understanding referred to must have been had at the time the mortgage was executed, in order to defeat it. A subsequent permission or understanding to that effect would have defeated it as well. Dunning v. Mead, 90 Ill. 376. But since there was no evidence whatever of any communication between the parties after the making of the mortgage and before the levy of the executions, the instruction was right enough as applied to this case. It is also urged that the executions were improperly admitted over appellant's objection for variance from their description in the pleas. We think, however, there was no substantial variance. The pleas averred them according to their legal effect, without attempting a particular description, and that effect was as averred. But we are of opinion that the court erred in refusing to set aside the verdict as unsupported by the evidence. It is true that difficulty is generally to be expected in the attempt to prove fraud, especially actual fraud, which involves intention. Usually it can be made only by circumstances, and where any are shown which fairly, though slightly, tend to prove it, they must be submitted to the jury, whose province is to weigh them and find the fact in issue. In this case we fail to find a single circumstance which tends in any degree to implicate appellant in the fraud charged, or in any other, actual or constructive, in connection with this transaction. There is no pretense of positive proof of any such understanding as charged between these parties. Both Loomis and Martin, the traveling agent of appellant, who took the mortgage, emphatically denied it, and testified that the contrary was expressly understood. The mortgage itself in terms provides that none of the property therein described should be sold by the mortgagor until the mortgage debt was fully paid, and the fact shown is, that, though it remained as before, among the stock

in the store, and doubtless some of it could have been sold during the five weeks intervening between the execution of the mortgage and the levy of the executions, none was sold or offered for sale. Aside from certain alleged statements of Loomis, which he denied, and which if proved would be no evidence against appellant, because made in its absence and after the execution of the mortgage, the circumstances relied on to establish the fact of such understanding, express or implied, are the four following:

First. It is said the mortgage covered property of value largely exceeding the amount of the debt. If this were true it might tend to show a fraudulent purpose to protect some of the debtor's property from execution or attachment by other creditors, but we are unable to see that it would be evidence of the understanding in question. We are of opinion that, upon the most liberal view that can be taken in favor of appellee, it is no evidence whatever of a fraudulent purpose of any kind on the part of appellant. Counsel claim that the property mortgaged was of the value of $1,700. We think the utmost that can be fairly claimed from the evidence of appellee, considered by itself, is that the retail price of such property, when new, would be about $1,500. That in question, consisting mainly of plows and cultivators, was not new, but was considerably shopworn, and upon the whole evidence was really worth but little, if any more, than the mortgage debt. According to general experience, from its sale under the mortgage, whether public or private, the creditor could not reasonably expect to realize, as net proceeds, any considerable excess. The security was taken, not by the creditor, but by its agent, who would naturally take all he could get, and in this case what he got was not too good to be honest. Without hesitation we hold that this circumstance—the proportion of the security to the debt—whatever it can reasonably be claimed from the testimony to have been, is simply no evidence whatever against appellant of a permission to Loomis to sell the property in the usual course of his business.

Second. The mortgaged property remained, as before the mortgage, among the stock in the store, not set apart, sepa-

rated, or by any other means or sign apparent to a visitor, shown to be not intended, like the rest, for sale. The statute recognizes this kind of security, in which the debtor retains possession of the property and may rightfully use it in any way that is lawful in itself and not inconsistent with the lien of the creditor. Appellant could not lawfully require Loomis to remove or separate it, or to indicate by any visible sign about the store that it was mortgaged; nor was Loomis under any moral obligation to do so. The fact was published as fully as the law required by the docket entry and record of the mortgage. Its remaining in the store would help the sale of the other goods therein and could not prejudice the rights of other creditors. Loomis made no attempt to sell any of it. In short all that was done or permitted in the matter was natural, sensible and strictly lawful, and therefore could not be evidence of fraud.

Third. The part of the stock not mortgaged could not bring enough to pay the mortgage debt. This circumstance would tend to show an understanding that the goods mortgaged were also expected and intended to be sold only upon the assumptions that when he took the mortgage Martin knew the remaining stock was not of value sufficient to pay the debt, and that he had no reason to expect payment by any other means than the proceeds of the goods then in the store, neither of which has any warrant in the testimony. That Loomis then told Martin he had good notes and accounts due amounting to about $1,000, and from collections of these and sales of the goods not included in the mortgage he expected to pay the notes as they matured, was clearly testified to by both, and undisputed. Martin said he did not know and did not make any attempt to ascertain or estimate the value of the remaining stock; it was hardly practicable, in the time he had to give to it, if he had desired to do so, since the items were numerous, mixed and scattered in three apartments; nor was there any occasion for it. The claim of his principal was secured, and he had no reason to question the statement of Loomis.

Lastly. The mortgaged goods, after they were replevied,

were shipped to Quincy for sale, through the general agency of appellant, located in that city.   On its face this circumstance clearly affords no proof of the alleged understanding. The mortgage authorized this disposition of the goods by the mortgagee, and manifestly it was made in reasonable expectation of a better market than Beardstown, and less inconvenience and expense in effecting sales.   The replevin bond was ample security for the return of the property, or its value, if plaintiff should fail in its suit, and its responsibility as trustee, for good faith and due diligence in making sale and applying the proceeds, is unquestioned.

Appellant sustained to Loomis no relation which could furnish a reason or motive for participating in a fraud for his benefit at the risk of losing its own claim, or any part of it. It was simply a creditor.   The reality and amount of its debt are admitted.   It was intent on collecting or securing it.   It had no such ground for confidence in his ability, whatever it might have thought of his integrity, as to make it prudent to trust him with the proceeds of the mortgaged property. Indeed, there would have been but little sense in taking a mortgage and permitting him to dispose of the security; much less would its traveling agent, whose business it was to collect or secure its claims, assume to deal so with its debtor in default.

We fail to find in the circumstances above mentioned, singly or combined, or in the light of any others shown, any evidence whatever, that it or its agent gave any such permission, by expression or implication; and if this mortgage is not to be sustained, all such securities upon chattels intended to be sold, might as well be abolished.

The jury must have failed to discriminate properly in the application of the evidence, and based their verdict upon what might have been regarded as sufficient proof against Loomis.   It would not be difficult to criticise even as applied to him; but it is enough to say that some proof of fraud against appellant also, was requisite, and because we are of opinion that none such was produced, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*